### 27337.   MORRIS *v.* COURTS *et al.*

DECIDED MARCH 1, 1939.   REHEARING DENIED MARCH 17, 1939.

670

*T. B. Higdon, E. H. Sheats, H. W. Belfor,* for plaintiff.
*Alston, Fosler, Moise & Sibley,* for defendants.

SUTTON, J. ■ The question here presented is whether or not, where the owner of a stock certificate has signed in blank on the back thereof a transfer and power of attorney, and has delivered it to another for a named purpose, he may maintain an action of conversion against a third party who, without notice of any defect in the title, purchases from a successive holder the certificate bearing the executed transfer and power of attorney, and thereafter delivers it to another purchaser. It is shown by the record that C.

F. Morris signed in blank a transfer and power of attorney and delivered a described certificate to American Bond & Share Corporation on October 18, 1934. It is undisputed that the delivery was made for the purpose of causing the certificate to be sold. On November 6, 1934, a salesman of the corporation reported to him that there was little prospect of realizing, at an early date, the price Morris had expected to receive for the stock. He suggested that the certificate be collateralized and the proceeds be invested in Morris's behalf. Morris thereupon signed an authorization to this effect, and also signed a "service agreement," which latter written instrument recited that it was subject to the approval of the Delaware office of the corporation. Plaintiff in error contends that thereby the idea of sale was abandoned, and that the service agreement itself was never approved, and that Bradley had no right to sell the certificate to Courts & Company. We think, however, that the two commitments were not inconsistent. In any event he knew the certificate bore the indicia of a holder's right to sell. He knew that it had not been entrusted to the corporation for safekeeping, but for use in providing him with funds. It was not retained against his will, and he never sought to recall it. Certainly it was not obtained from him by any artifice or deception, and there is nothing in the record to show that Bradley acquired it in any way unlawful.

Much is said by counsel for the plaintiff in error as to the certificate not being in form for negotiability, but the evidence relied on and adduced on the hearing relates rather to the question of putting the certificate in condition for acceptance by one not satisfied with the transferor's signature. Just how the certificate came into Bradley's possession is not disclosed. There is nothing in the record, however, that shows that Courts & Company were put on notice that he was not a bona fide holder, qualified to sell the certificate. It is sufficient to say that there was no evidence of any larceny of the certificate at any time. In these circumstances a blank assignment and power of attorney indorsed on the delivered certificate estops the transferor from claiming any further interest or title in the stock as against a bona fide transferee. This is on the principle contained in Code, § 96-207, that, where an owner has given to another the external indicia of the right of disposing of his property, a sale to an innocent purchaser divests the true

owner's title, and on the principle contained in Code, § 37-113, that "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." The case is controlled on its merits by *Lilly* v. *Citizens Bank & Trust Co.*, 44 *Ga. App.* 653 (162 S. E. 639); *Georgia Casualty Co.* v. *McRitchie*, 45 *Ga. App.* 697 (166 S. E. 49); *Fulton National Bank* v. *Moody*, 51 *Ga. App.* 179 (179 S. E. 831); *Savannah Bank & Trust Co.* v. *Groover*, 56 *Ga. App.* 27 (192 S. E. 49); *Groover* v. *Savannah Bank & Trust Co.*, 186 *Ga.* 476 (198 S. E. 217); *Noras* v. *McCord*, 59 *Ga. App.* 311 (200 S. E. 513); National Safe Deposit Co. *v.* Hibbs, 229 U. S. 391 (33 Sup. Ct. 818, 57 L. ed. 1241). The plaintiff in error contends that the principles above announced apply only where the innocent party has acquired the certificate or property from one who received it directly from the true owner as agent. We do not think the position tenable, and know of no law that supports it. The estoppel is based on the justice of protecting an innocent purchaser against damage that would otherwise come to him through the original act of the owner in making it possible for one, whether immediate or in succession, to appear as rightfully entitled to sell that for which the innocent party parts with his money or property. Many reasons have been urged by counsel for plaintiff in error why it should be held that under the evidence Courts & Company were put on notice of Bradley's lack of right to sell the certificate of Morris, but it would require undue exposition to show wherein this contention is not supported. Suffice it to say that the briefs of counsel have been painstakingly read and considered, but we do not think the evidence shows otherwise than that, in making the purchase, Courts & Company were entirely without notice of any defect in the title or of anything from which such defect might have been ascertained. Under the law and the evidence the court properly directed a verdict for the defendants.

■ The first special ground of the motion for new trial assigns error on the direction of a verdict and is controlled adversely to plaintiff in error by the ruling in the preceding division of this opinion.

■ The second special ground complains that the court erred in holding that the burden was on the plaintiff to prove that the certificate of stock did not come into Bradley's possession in a

lawful manner in due course and that the defendants did not purchase it in good faith. Inasmuch as the evidence demanded a finding that the defendants acquired the certificate in good faith and without notice of any defect in the title, the instruction, even if erroneous, was not harmful to the plaintiff.

■ The third special ground which complains that the court erred in requiring from the defendants evidence only as to their bona fides in purchasing the certificate was not good for any reason assigned.

■ The fourth special ground complains that the court erred in excluding from evidence an agreed statement signed by counsel for defendants in respect to Bradley having been indicted in the district court of the United States for the northern district of Georgia for the offense of fraudulently obtaining bonds, certificates of stock, and other "negotiable evidences of indebtedness" from John F. Green and others, and in which statement it was admitted that Bradley entered a plea of guilty to the indictment and was sentenced to serve a term in the Federal penitentiary. The agreement is headed "John F. Green et al. v. R. W. Courts et al," Nos. 109014, 109015, 109016, and 109139, and it is contended that as No. 109016 refers to the present suit the agreement was admissible as showing that Bradley's possession of the certificate was unlawful. Aside from the fact that the record shows that at the beginning of the trial counsel for the defendants stated to the court that there were no admissions in the case, in which counsel for the plaintiff apparently acquiesced, the written agreed statement was not admissible, inasmuch as, while the caption bore a number which is the same as that of the present suit in the superior court, the statement does not refer to the particular certificate which is the subject-matter of the present litigation, and for that reason was inadmissible.

■ The fifth special ground complains of the exclusion from evidence of indictments in Fulton superior court against Bradley, charging him with the offense of larceny after trust from American Bond & Share Corporation of certain shares of stock of the Georgia Power Company, including the certificate on which the present action is based, it being contended that they tended to establish the fact of larceny of the stock certificate. It not being shown that Bradley had been convicted under the indictments, they were not

admissible for any reason urged by the plaintiff in error. Furthermore, even if Bradley had been guilty of larceny *after trust,* having acquired the certificates lawfully his subsequent felonious act in misappropriating them would not affect the right of an innocent purchaser of the certificate.

■ The sixth special ground complains that the court erred in admitting in evidence the original of the service agreement executed by the plaintiff, and in overruling the motion of counsel for plaintiff that there be substituted for the original a blank form identical with the original and which one of the partners of Courts & Company had identified as being a form which was used by American Bond & Share Corporation and with which the witness was familiar. The agreement provided that it was not to be binding until approved and accepted at the Delaware office of the corporation, and attached to the duplicate of the original was a form of acceptance to be signed by the Delaware office if approved. Counsel for the defendants contended that the original should be admitted as evidence of a contract made by Morris, authorizing not only the officers of the corporation to act for Morris in their official capacity but as individuals under the power granted in the agreement. Counsel for the plaintiff contended that the agreement was never approved, and that the original was inadmissible as evidence of a contract, and that the copy should be substituted and admitted only as a form of contract, constituting an offer which was never accepted before the certificate was sold. The trial court finally admitted the original "for what it was worth," and plaintiff in error contends that its admission was prejudicial as tending to show a contract when in fact none existed. The court did not admit the original as evidence of a contract but only "for what it was worth." We think that under this instruction it was evidential and relevant as showing that at the time of its execution Morris was still agreeable to the certificate being in the possession and custody of the corporation with all the indicia of ownership in the holder, and was making no effort to regain possession or do anything inconsistent with his original act of having put the certificate out in the world for delivery to an innocent purchaser.

■ The seventh special ground complains that the court erred in refusing to permit counsel for the plaintiff to ask the defendant, Malon C. Courts, the following question: "Have you ever had

occasion to confer with your attorneys regarding the legal effect of the power of attorney that you spoke of having seen that the American Bond & Share Corporation was using?" It is contended that its exclusion was prejudicial, in that it tended to deprive the plaintiff of proof that the witness was aware of the contents of the document in question, having conferred with his attorney regarding it. The question was immaterial and idle, because it would not have been proper to elicit by a subsequent question the nature of the conversation between client and attorney, and a mere answer that a conference had taken place would not afford any evidence of the witness's knowledge of the contents or meaning of any document.

■ The eighth special ground complains that the court erred in overruling plaintiff's objection to the question propounded to the plaintiff, "What was the occasion on which you signed that paper [an authorization to sell the certificate of stock]?" It is contended that the subsequent authority to collateralize the certificate revoked the authority to sell, and that, therefore, evidence of a prior transaction in respect to the certificate was incompetent and immaterial. We have ruled that the authority and service agreement to collateralize the certificate of stock was not inconsistent with, and did not revoke, the original authority to sell at $60 per share, and consequently the question was not objectionable for the reason assigned.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*